## In re K.M.

[678 A.2d 1263]

No. 93-340

May 7, 1996. K.M. appeals the family court's involuntary hospitalization order. K.M. argues that the court erred in granting the involuntary commitment order without requiring the State to prove that voluntary treatment was not possible in his case. We reverse and remand.

In April 1993, K.M. was admitted to the Vermont State Hospital for "emergency examination" pursuant to 18 V.S.A. § 7504. He was diagnosed as suffering depression and a personality disorder. The State filed an application for involuntary treatment with the family court. A few days before the hearing on the State's application, K.M. submitted a written request to register as a "conditional voluntary" patient. As a conditional voluntary patient, K.M. could have been required to give four-days' notice before leaving the hospital. During that time, the State could seek involuntary admission of the patient if necessary. See 18 V.S.A. § 8010. K.M.'s treatment team told him that he would not be accepted as a conditional voluntary patient, and K.M. requested a grievance hearing before the executive director of the hospital. The grievance hearing was held on May 6, 1993;* the family court hearing on the State's application for involuntary commitment was held the next day.

Although K.M. raised the issue of voluntary treatment at the involuntary commitment hearing, the court refused to consider whether voluntary treatment was possible. Instead, the court limited its decision to whether or not K.M. met the criteria for commitment. The court found that K.M. was a threat to himself and others and ordered that he be committed.

On appeal, K.M. points to our recent decision in *In re R.L.*, 163 Vt. 168, 657 A.2d 180 (1995), where we emphasized that involuntary treatment must be considered a last resort for the treatment of the mentally ill and noted that 18 V.S.A. § 7703(a) prohibits the State from using involuntary treatment where voluntary treatment is possible. *Id.* at 173, 657 A.2d at 184. We held that "once [a] patient puts in issue his request for voluntary treatment . . . the State must show by clear and convincing evidence that voluntary treatment is not feasible before the family court may enter an order for involuntary treatment." *Id.* at 174, 657 A.2d at 184. K.M. maintains that the family court should not have ordered his commitment because the State did not show by clear and convincing evidence that voluntary treatment was not possible.

We first reject the State's argument that K.M. was required to raise the issue of voluntary treatment as an affirmative defense. *R.L.* requires only that the patient "put[] in issue" a request for voluntary treatment, which K.M. did by filing

---

* Several days after the commitment hearing, the hospital director denied K.M.'s request to change his status to voluntary. K.M. appealed this decision to the Commissioner of the Department of Mental Health, who upheld the director's decision.

such a request with hospital officials and raising the issue at the commitment hearing. *Id.* This was certainly enough to put the request in issue, and require the State to show that voluntary treatment was not possible. *Id.* In any event, "affirmative defense" is a misnomer, as the State has the burden of proof on the issue.

K.M. repeatedly raised the issue of voluntary treatment at the commitment hearing, and pursued his request for a change to voluntary status through administrative procedures. Moreover, K.M.'s treating physician testified that K.M. was competent to make his own decisions, and was willing to take prescribed medications and meet with his therapist. K.M.'s expert witness also testified that K.M. was competent to make the decision to accept treatment. Although the court made no findings on this issue, this evidence suggests that K.M. may have been able to make the decision to voluntarily accept treatment. Cf. *id.* at 175, 657 A.2d at 185 (voluntary treatment not possible because R.L.'s mental illness grossly impaired his judgment and thought processes, to extent that R.L. was incapable of making reasoned judgments).

The State asks this Court to find, based on the record below, that conditional voluntary status was not possible for K.M. because he posed a danger to himself and others. Granting K.M. conditional voluntary status is not, however, tantamount to releasing K.M. As we have already noted, as a conditional voluntary patient, K.M. could be required to give four-days' notice of his intent to leave the hospital. 18 V.S.A. § 8010. If his treatment team disagreed with his decision, the State could seek an involuntary commitment order during that time. See *In re M.D.*, 163 Vt. 130, 134, 655 A.2d 723, 725 (1994) ("As a practical matter, the level of administrative control over a voluntary patient is not less significant than control over involuntary patients.").

Although we conclude that the State did not meet its burden in this case, we are reluctant to reverse the commitment order outright. The family court refused to consider the feasibility of voluntary treatment, and made no findings on the issue. Moreover, it appears from the record that the court excluded evidence from the State on the issue of conditional voluntary treatment. We therefore remand the case to permit the State to introduce this evidence.

*Reversed and remanded for further proceedings not inconsistent with this opinion.*

